THOMAS DEMPSEY, Respondent, v. GREAT ATLANTIC AND PACIFIC TEA COMPANY et al., Appellants.

First Department, November 22, 1960.

420

*Jerome Doyle* of counsel (*H. Richard Schumacher* with him on the brief; *Cahill, Gordon, Reindel & Ohl,* attorneys), for Great Atlantic and Pacific Tea Company, appellant.

*Samuel Harris Cohen* of counsel (*Ira Drogin* with him on the brief; *Boudin, Cohen & Glickstein,* attorneys), for Local Union 400 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, appellant.

*Samuel Bader* of counsel (*Bader & Belson,* attorneys), for Local Union No. 489, appellant.

*Edward D. Burns* of counsel (*Joel S. Stern* with him on the brief; *Roy M. Cohn,* attorney), for respondent.

STEVENS, J. These are separate appeals from orders denying the motions of defendant-appellant, the Great Atlantic and Pacific Tea Company (hereinafter called A & P) and defendants-appellants Local Union No. 400 and Local Union No. 489 (hereinafter called Unions) to dismiss the complaint on the ground that the court lacks jurisdiction of the subject matter. Additionally, Unions contend there exists a judgment on the merits between the parties determining the same cause.

Since common questions are involved, and for convenience, the two appeals are considered together.

The plaintiff, a former employee of A & P, whose services were terminated in December, 1953, charges the defendants with conspiracy and fraud in the negotiation of a union shop contract. He alleged in his complaint that some time in October, 1952 the defendants entered into a conspiracy with each other and formed a deliberate design and purpose to injure the plaintiff, that the defendant Unions induced numerous employees of the defendant A & P to sign and mark certain cards by falsely and fraudulently stating to said employees that they were helping certain other employees of the A & P to obtain a better contract. Further, that the defendant Unions forged the signature of employees of the defendant A & P on said union cards for the purpose of making it appear that they represented a majority of the defendant A & P's employees, and by reason of such fraud they gave the impression that the defendant Unions had the apparent right to represent the employees. He charges that A & P, knowing that the defendant Unions did not represent a majority of the employees, entered into a written agreement with the Unions which was mutually beneficial to the Unions and A & P and detrimental to the plaintiff and other employees. It is alleged that the agreement was secretly and fraudulently entered into without the knowledge and consent

of the plaintiff and other employees of the A & P, and in violation of the Labor Management Relations Act. Plaintiff asserts that in furtherance of the design and conspiracy between the defendants the said written agreements contained a provision requiring all of the employees of the A & P to join and pay dues to the defendant Unions as a condition of continued employment, that the agreements were illegal and fraudulent, that he as plaintiff refused to join and pay dues to the Unions, and as a result, and in furtherance of the design and conspiracy, his employment was terminated December 11, 1953. Plaintiff also set forth in his complaint that he was at no time a member of either of the Unions involved here.

The record reveals that on January 8, 1954, plaintiff filed with the National Labor Relations Board (herein called Board) a charge against Local 400, one of the defendants-appellants here, that it caused his discharge from the A & P because he was not a member of said local. This charge was later withdrawn on or about August 1, 1954, by the plaintiff with the approval of the Board.

Earlier, and after a hearing before an arbitrator designated by the New York State Mediation Board, pursuant to the contract between the A & P and the Unions, the right of the Unions to discharge the plaintiff and others was upheld. While the proceeding was between A & P and the Unions as parties, the plaintiff was invited to and did participate therein. The award granted by the arbitrator was later confirmed by the Supreme Court by order dated December 30, 1953. No appeal was taken therefrom.

It is not disputed that A & P is engaged in an industry affecting commerce within the meaning of the act (Labor Management Relations Act, 1947, § 2; U. S. Code, tit. 29, §§ 142, 152).

Plaintiff urges that this is an action in tort for damages for the alleged wrongful acts of the defendants, and that these acts of alleged fraud and conspiracy were not discovered before May, 1958.

Examination and analysis of the complaint reveal that the plaintiff asserts in substance that the defendant Unions were not properly recognized as the bargaining agents for the employees by reason of the fraud and the forging of the representation cards. This is a question peculiarly within the competence of the Board, that is, to determine the bargaining representative of a group of employees. (Labor Management Relations Act, 1947, § 9; U. S. Code, tit. 29, § 159.)

The complaint further charges a wrongful interference with plaintiff's employment culminating in his discharge. As such

it falls clearly within the language of sections 7 and 8 of the National Labor Management Relations Act, 1947 (U. S. Code, tit. 29, §§ 157, 158; see, also, § 160). Those sections declare the right of employees to organize and bargain collectively through representatives of their own choosing, and declare what acts or actions on the part of employers or unions shall be unfair labor practices.

The issue before us is whether the fact that the unfair labor practice charged is also a tort (since for the purposes of this determination all allegations of the complaint well pleaded must be taken as true) suffices to confer jurisdiction of the court. A subsidiary question may be: could the court in this case award monetary damages?

" When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *San Diego Unions* v. *Garmon* (359 U. S. 236, 244) where there is an arguable or doubtful question of jurisdiction, determination in the first instance must be left to the National Labor Relations Board. (*San Diego Unions* v. *Garmon, supra*; *Columbia Broadcasting System* v. *McDonough,* 6 N Y 2d 962; *Stork Restaurant* v. *Fernandez,* 8 A D 2d 38.)

Questions of representation of the proper bargaining union, where the employer is engaged in interstate commerce, or questions dealing with the validity of such designation, are to be resolved by the National Labor Relations Board (U. S. Code, tit. 29, § 159).

As was pointed out in *Stork Restaurant* v. *Fernandez* (*supra,* pp. 43–44): " There have been occasions where the United States Supreme Court has upheld or approved State action. Such instances fall into fairly well-defined categories and encompass areas where State court action deals ' with arbitrariness and misconduct vis-à-vis the individual union members and the union ' and those State court decisions which ' do not present potentialities of conflicts in kind or degree which require a hands-off directive to the states '. (*Machinists* v. *Gonzales,* 356 U. S. 617, 622 [breach of a labor contract through wrongful expulsion].) Where the activity complained of has been marked by actual or threatened violence to persons or destruction of property State action has been upheld. (*Automobile Workers* v. *Russell,* 356 U. S. 634 [suit by union member against union for the tort of wrongful interference with a lawful occupation by threats, etc.] ; *United Workers* v. *Laburnum Corp.,* 347 U. S.

656 [a common-law tort action between a union and an employer for damages based upon tortious conduct which also constituted an unfair labor practice].) ' State jurisdiction has prevailed in these situations because the compelling state interest * * * in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction.' (*San Diego Unions* v. *Garmon,* 359 U. S. 236, 247, *supra.*) The case before us does not fall within that protective range." Nor does the fact that the Board could not compensate, though it might restrain, suffice to confer jurisdiction upon State courts " to regulate activities that are potentially subject to the exclusive federal regulatory scheme." (*San Diego Union* v. *Garmon, supra,* p. 247.) However, it should be noted that the Board does have power to issue cease and desist orders as to unfair labor practices and to order the reinstatement of employees with or without back pay for the discrimination suffered by such employee (U. S. Code, tit. 29, § 160, subd. [c]). Plaintiff abandoned any effort to utilize this provision when he withdrew the complaint which he filed with the Board.

Moreover, when plaintiff in 1954 filed a charge of an unfair labor practice against Local 400, one of the defendant-appellant Unions, that it wrongfully caused his discharge because he was not a member in good standing, the Board accepted and retained jurisdiction until plaintiff withdrew such charge. The fact that plaintiff is now barred from filing a charge of an unfair labor practice with the Board (Labor Management Relations Act, 1947, § 10, subd. [b]; U. S. Code, tit. 29, § 160, subd. [b]) does not suffice to confer jurisdiction upon the State courts where, as here, the area so clearly has been pre-empted by Federal action and where, further, such jurisdiction has not been ceded by agreement to any State agency as provided in subdivision (a) of section 160.

There can be no claim of arbitrary action or misconduct by a Union to one of its members, for plaintiff was never a member of the Unions involved here. Nor is there that breach of a fiduciary duty which under certain conditions might conceivably afford a remedy at law. (Cf. *Matter of Soto [Goldman],* 7 N Y 2d 397.)

Summarizing, it is clear from the pleadings that the plaintiff charges that the Unions were improperly recognized as the bargaining representatives by reason of the fraud complained of, and that he charges further that there was wrongful interference with his employment, causing his discharge, in brief, an unfair labor practice. As pointed out, questions of representation and questions dealing with an unfair labor practice

are matters which by the language of the Labor Management Relations Act fall within the jurisdiction of the National Labor Relations Board. It is true that certain torts have been recognized as apparent exceptions, but the requirements that the torts threaten the domestic peace of the State and that there is an imminent danger of violence, etc., are not met in the allegations of the complaint of this plaintiff. The questions presented are more than arguably subject to the provisions of the Labor Management Relations Act and jurisdiction falls within the Federal orbit. (Cf. *Dooley* v. *Anton,* 8 N Y 2d 91.)

Accordingly, the orders appealed from should be reversed, the motions to dismiss the complaint granted, on the law, with costs to the appellants.

BOTEIN, P. J., BREITEL and McNALLY, JJ., concur.

Orders, entered on March 22, 1960, denying defendants-appellants' motion, pursuant to rule 107 of the Rules of Civil Practice, to dismiss the complaint, unanimously reversed, on the law, with $20 costs and disbursements to the appellants, and the motions granted, with $10 costs.